May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of Petitioner Victor Yotz-Avalos. The undisputed facts of this case compel the conclusion that Mr. Yotz is a victim of past persecution and that he is, therefore, entitled to the regulatory presumptions of future persecution. Because neither the immigration judge nor the Board attempted to apply those presumptions, this Court needs, at a minimum, to remand this matter to the BIA. Okay. Now, the immigration judge found Mr. Yotz's testimony Excuse me, what would we be remanding, please? At a minimum, Your Honor, we'd have to go back so that the immigration judge could apply the presumptions that apply when someone demonstrates that he or she is a victim of past persecution. Assuming we find past persecution. Correct. Yes. Okay. Now, the judge found his testimony, as I said, entirely credible. And she noted, and this is in her decision, that he had, quote, suffered tremendously emotionally upon being an obvious member of an indigenous group. But she ultimately concluded that the various harms that he had suffered, even when considered cumulatively, didn't rise to the level of persecution. And we think that any reasonable person would have to disagree with that conclusion. The various harms that he had He decided it wasn't direct. It directed it He didn't suffer it directly. It was to the family, isn't it? That's true. That's true. But certainly, the case law of this circuit doesn't preclude a finding of past persecution simply because he didn't himself suffer physical harm. This Court has held in numerous cases that death threats, accompanied by personal confrontation or abuse of family members, can constitute past persecution. And that's the kind of case we have here. If we did remand, what would be open on remand? Would there be changed country conditions, the ability to relocate, that kind of? Well, there are two different ways that you could approach this. I mean, one is to say that he suffered past persecution and remand with respect to whether the government can rebut the presumptions. The other is to examine, irrespective of whether he's demonstrated past persecution, does he have a well-founded fear? And I can address that very briefly because here, if I could just walk you through the immigration judge's decision, the immigration judge says Well, has the BIA addressed or the IJ addressed the well-founded fear? The IJ does, but she doesn't address it in the context of the presumptions. Right. She assumes there's no past persecution and then addresses it, you know, sort of freestanding. Right. I think that conclusion is also wrong. And I Well, I'm just trying to understand under Ventura whether we're, you know, whether we're always crafting these remands. Right. We want to make sure we don't stumble over that. So in your view, we could address the well-founded fear? Not with respect to that insofar as the presumptions might apply, but you could review that aspect of her decision where she said, even though he's not a victim of past persecution, he, he, I'm going to look at whether he has a well-founded fear. And she concludes that he doesn't. If the evidence compels a contrary conclusion, you could reverse that. If you disagree with that, then under Ventura, but you find past persecution under Ventura, you'd have to remand. Okay. On the well-founded fear part of the claim, I do want to just walk through that very briefly because she says, this is on page 142 of the record. She says, there's no question that this respondent had a reasonable fear of persecution based on what he had seen in his home country. And she says the issue, though, is whether he currently has such a well-founded fear. And she says he, although he had a well-founded fear, he no longer does. And she, she makes three points as to why he no longer has a well-founded fear. And this is on pages 143, 144 of her, of her, of the record. The first is she says, well, the, the peace accords have been signed. She doesn't talk any further about that, but she just says the peace accords have been signed. Well, if you go and look at the documents of record, this is on page 222, it says, even after the March ceasefire, guerrillas continued to employ death threats, the use of mines, explosives and, mines and explosives in civilian areas, and forced recruitment. Do you think there's any chance that her decision would change if she had to make that determination in light of the presumption? I do. Okay. Particularly in view of the fact that eight years have passed, and there's plenty of documentation that we could present at this point about, you know, former guerrillas acting against former soldiers as sort of a revenge thing. So, yes, I do. I have, I have a point that I can't, I keep stumbling over in all this analysis, and that is, as I understand the record, at about age 17, the guerrillas came to his home and tried to take him at that point and decided not to. They didn't. Right. He later is then conscripted or forced, if you will, into the military, and the guerrillas come back to his home, where his brother was, the deaf brother, kidnap him, looking for Avalos. Right. Burn his house, burn the village. Right. And those are the most direct, at that point anyway, confrontations, if you will, not directly to him, but to his family. Right. In the meantime, letters of death threats are coming to the family's new home where they moved to another place. I can't remember where the other place was. Yeah. So he serves his term under the conscription and then volunteers into the, I think it's called ambulatory police. That's right. In which he was barracks with the army, but he protected from terrorists, civilian, things like banks. Right. And he's carrying a gun. People are shooting at him. He's shooting at them. And he's worried about a letter. Now, how can he be worried about a letter when he's facing the enemy who's supposedly sending him a letter and has a gun and he's looking at him? I have a problem with that. Now, it's not really defined in the briefs and certainly not by the IJ, but I have a problem if we review the entire record. And I read the transcript pretty carefully. Right. He admits that he faced the enemy and he's armed. And what does he expect that the enemy is going to do with a gun that's any lighter than this letter? I mean, I'm having a problem with this letter business. Yeah. I mean, what he said was, quote, and this is on page 185. While I was in within the army, I was protected. But the minute I would step out onto the street, I was no longer protected. I mean, he was able to protect himself, presumably with a gun. But still, there were death threats being made against him. And I think, you know, if I can't. Are you trying to say that when he he's in the barracks, he's protected? But if he walks out, he's not protected? Well, less protected. He would have at that point only the ability to protect himself. Any other military person, the guerrillas are trying to kill them and there is a war going on. So what's the difference? And the point on that, Your Honor, is that the immigration judge didn't have any issue with the unaccounted here. I mean, normally that comes up by saying, well, he's a soldier and this is a normal event of war. It's not, you know, it's not on account of one of the protected grounds. But here the immigration judge conceded that everything here was on account of his race, that he was being targeted because of his race. And insofar as the unaccounted is concerned, that's not an issue here. The only issue is, do these death threats, when combined with all these other things, rise to the level of persecution? And the point that you're making, I think, is a good one. But I think you've got to step back and also take into account that because of the death threats, this guy felt that he had to remain a member of the military for like a dozen years. He didn't feel free to leave the military for that 10 or 12-year period because of the threats. Is part of that answered because the I.G. found him credible and took for granted what he said? So I guess we have to take for granted what he says. I was fearful. I stayed in the military to protect myself. Exactly. And what he says, I mean, I think this is an important part of his past persecution claim because he hated being in the Army. He was repulsed by what was happening around him, but he felt that he had no choice but to remain. He couldn't leave. And on page 185, the way he explains it, he laments that he basically, he lent his whole life to the Army without any benefit at all, for nothing. Essentially, he sacrificed 10 years of his life remaining with the Army, repulsed by what was happening around him because he felt he had no choice given these guerrilla threats. He felt that he couldn't leave and remain safe. But going back to the issue of the ---- Do you want to save any time for rebuttal? Yes, Your Honor. I'll do that. Thank you. May it please the Court. I'm Howard Scherr from the Department of Justice representing the Attorney General. While the question of credibility has been determined already by the I.J. and this Court wouldn't second-guess that, I think what the I.J. said was that his own, that is, Avalos' own personal belief concerning persecution was credible, but that, in fact, when measured against the facts of the record, there was no indication that he ever suffered any harm or there was any evidence of or real evidence of persecution. That's at page 140, 141 and 142 of the administrative record. What I think that means is ---- That's a conclusion from the facts. Correct. And the facts are what the I.J. found credible, his testimony as to the facts. He found his testimony credible insofar as his sincere belief that he faced persecution. But in this respect ---- But I see what happened as to all of the events. He found his testimony credible. What those events added up to, legally, is where he disagreed, where she disagreed. Correct. And among those facts was the most important thing, which went to actually Judge Brunetti's question, which is, he went home every month while he was in the military and the military police for a couple of days to his hometown, where he claimed he would be well-known by the guerrillas and they would get him. So, in fact, to that extent, to the extent that he feared some persecution, the facts were in tension with that. And that's why the I.J., in my opinion, reading the whole record, determined that there was really no threat. Well, you ought to be able to determine why the I.J. reached conclusions from reading what the I.J. said, not what you find in the record. It is ---- The Court takes, I think, into account the entire record. And here, what the I.J. said in accumulating the evidence before he got to the critical ---- she got to the critical point on page 140, she was totting up the evidence that she concluded made Avalos think he feared and was sincere about fearing persecution. But then she said there's no real evidence here. And among the no real evidence is the fact that Avalos did, in fact, go home every month into his hometown, where apparently nothing ever happened to him. And in ---- I think in that regard, the Gu case, G.U., is instructive with respect to this whole nebula ---- calculus of facts. In Gu, there was a tension between a Chinese immigrant's claim that the authorities were going to get him if he continued to go to church, so he never went to church. And the court ---- this Court found that those threats were never fulfilled, even though Gu stopped going to his church in China. Judge Pragerson dissented in that case, and he dissented strongly on the basis that there was this effect on Gu, that, in fact, the threats kept him from going to church. But nevertheless, the majority viewed ---- and I'm paraphrasing here ---- the threats as unfulfilled, and there ---- and no other evidence of threats against Gu, and therefore upheld the I.J.'s determination in that case. And here, I would say, in somewhat an analogous fashion, there are these threats in these letters that keep coming to Avalos' home, which didn't prevent him from going home, but may have caused him to stay in the military. But nevertheless, the kind of ---- that kind of conduct, where he stayed in the military to avoid the guerrillas, lines up almost precisely like the facts of Gu, where the majority actually rejected Judge Pragerson's view that the threats were actually ---- had some effect. Because Gu stopped going to his church in China. Here, the threats may have kept Avalos in the military, but, in fact, nothing ever happened to him by the guerrillas. On top of that, layered on top of that, is the fact that he went home on a regular basis, and nothing ever happened to him. Well, I understand that. I have been having a problem because, actually, we have a pretty detailed I.J. decision. A lot of times, we don't. And she made some very specific facts that he was credible or findings that he was credible and worthy of beliefs. There's no question that the Respondent has a reasonable fear of persecution based upon what he has seen has been done in his home country by both sides, the guerrilla and the military. There's no real evidence the Respondent has suffered. Past persecution is the case. I don't understand how you come to those conclusions and how I'm supposed to approach that. First, she finds him credible, worthy of belief. No question that he has reasonable fear of persecution. Then she said there's no real evidence he has suffered past persecution. How do we view that? Well, again, my best response to that is I think she was totaling up what he said. And in regard to that, based on his emotional reaction, which she details in the opinion, that he had a he was credible in thinking he was afraid of persecution by the guerrillas. On the other hand, there were no facts to support it because he was protected when he was in the military. She seems more to be focused on and seems to, at some point, conflate future fear of future persecution and sort of slides past the past persecution. That's how I read it. I think there's some difficulty with that, and I agree. But in part, there is a separate part in which the I.J. identifies the future persecution. She does. But she, you know, you look. I was reading the same passage as Judge Brunetti pointed out. And it is a little hard to say, well, all of what went on wasn't past persecution. And then she really seems to justify it more by saying, well, you know, things have changed, and so he should be able to get along. I think under the standards in which the standard. It's pretty confusing. I'm sorry, Your Honor. I think the standard in which the standard here is whether there is substantial evidence to support the I.J.'s determination or whether, in fact, the position that Mr. Avalos takes is compelled by the record on. Well, I think we understand that. But the problem is, is that there's a big difference between her eliding past persecution and going on to, as you know, future persecution. It depends on who has the burden. And if she if there is past persecution, the burden shifts to the government. And I don't get a sense that was the standard she was applying. Well, that's correct. You're correct on the standard there. And that's why I wish to defend this past persecution point, because I think, in fact, there is an explanation, that is to say, the judge felt that Mr. Avalos was sincere on the stand about his feelings, but that, unfortunately. Well, the objective facts are, you know, we've found past persecution on certainly similar circumstances as that, when everybody around him is being harassed. That is, his family, house burned down, brother taken, so forth. I think in many of the cases that I've read, and again, this is a question of line drawing, and I agree with the Court, the best the cases I've seen tend to have a more direct threat against the individual. For example, even the Molina Estrada case, which we cite, involves a case in which the individual's house was bombed. And the I.J. found the person credible. Yet the Court found that notwithstanding that, there was substantial evidence to support the I.J.'s determination. There was no information directed that the bombing was directed at the Petitioner in that case. Yeah, but here there is. She found him credible and worthy of belief. And what he said was they came looking for him at his house, not finding him, took his brother and burned the house. Now, that's pretty direct. When I read this I.J.'s opinion, I thought she was heading toward the other way. And all of a sudden, she flipped gears after she found all those credibility findings. What if we do find that there was, that she was wrong and there was past persecution? Shouldn't we send her back? You need to remand it under the standards of intera for a determination by the BIA regarding future persecution, where the presumption is established that the individual in the United States has to overcome. In this case, though, one of the things the I.J. did not cite in particular, but in which is very important here and we, and is part of the record, is the fact that nothing directly ever happened to Avalos on all the times he would go home and visit every month on furlough for a couple of days. But she found him credible in his fear, and he said he was fearful all the time. Well, she did find him credible on that. And I think that while he was afraid, same as Gu was afraid of going to church in China, what I think she found is his fear did not match up with his actions. And I think that's So what? You know, it's, we're talking there about a subjective fear. What we look at is whether there's an objective basis for the fear. I mean, if he was somebody who was fearful but took a particular risk because he cared about his family and was willing to risk getting killed, that has nothing to do with whether there's an objective basis for it. I think that's part of it, but here that is an unanswered question. Are you questioning the subjective fear or the objective fear? No, I'm questioning the objective evidence. Of course, in past persecution, you don't have this subjective objective as you do with future persecution. All I'm saying is the individual, Avalos, was saying one thing, but then, but doing another, according to the record. Well, what's inconsistent about having fear and still being willing to go home once a month, even though you're afraid you may be killed? It doesn't match up with the fear of the persecution that he's claiming. That's all I can say about that. I don't understand why it doesn't match up, that you're afraid that you're going to get killed, but you're still willing to take that risk. Why doesn't it match up? Well, it doesn't on this record because Mr. Avalos didn't say that part, attach that part of the explanation to his trips home. He just my time is up. May I finish? Yes, sir. I think all he said was, as a matter of fact, and he said it plainly, without sort of, well, I was willing to risk this. Thank you, counsel. Unless the Court has other questions. I do. You have another appeal or case part of it. You declared it moot, but if it's not moot, then what should we be doing with it? Well, the agreement that we made with the U.S. Attorney's Office is that we would treat that as moot if the appeal could be reinstated. It's not actually moot in the sense that if they would reissue the decision, obviously, we'd have another 90 days to make a motion to reopen, for example. So it's not actually moot. But that was the agreement. So if it's not actually moot, what are we supposed to do? Order the board to reissue its decision. I mean, that's an important aspect to this case, because the lawyer who is representing this man, he's been disbarred. And the work that was done in front of the immigration judge and the Board of Immigration Appeals was poor at best. If the board were to reissue its decision, we would have plenty of time to make a claim based on ineffective assistance of counsel to enhance this record. But if we find on, if we were to remand on the case we've been talking about this morning. We would have that opportunity as well. We would do it in that. Why, what would we need to do on the related case? You wouldn't have to. If. And what should we do with it? If it's not moot. If it's going back on that ground anyway, then I agree that it, then it is truly moot. All right. Thank you. Thank you, Your Honor. Thank you both. The case just argued will be submitted. Next case.
judges: Reinhardt, Brunetti, Fisher